2008 OK 105

# IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

TED KRUCHOWSKI, GERALD ADAMS,
WILLIAM COOPER, TONY FENNELL,
ALAN GEBERT, HAROLD GRIFFIN,
STAN HARRIS, FORD HENDERSHOT,
ED RISENHOOVER, SUSAN ROGERS,
LINDA SLABAUGH, and JOEL WHITE,

    Plaintiffs,

v.

THE WEYERHAEUSER COMPANY,

    Defendant.

and

LARRY THOMPSON,

    Plaintiff,

v.

THE WEYERHAEUSER COMPANY,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
SUPREME COURT
STATE OF OKLAHOMA

DEC 16 2008

MICHAEL S. RICHIE
CLERK

No. 104,872

For Official Publication

CV-03-649-JHP

**FILED**

DEC 18 2008

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By _____
Deputy Clerk

## CERTIFIED QUESTIONS OF LAW FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA
### Honorable James H. Payne, District Judge

¶0 In List v. Anchor Paint Mfg. Co. 1996 OK 1, 910 P.2d 1011, the Court declined to extend the Burk tort remedy to a claim involving allegations of constructive discharge based on age discrimination because the plaintiff had "adequate" statutory remedies for age discrimination. Ten years later in Saint v. Data Exchange, Inc., 2006 OK 59, 145 P.3d 1037, the Court held that a plaintiff who asserts an age discrimination claim may pursue a state law claim for wrongful discharge in violation of public policy when the available remedies to the same class of employment discrimination victims are not uniform and evenhanded – regardless of whether the remedies originate under Federal statutes or state law. The United States District Court for the Eastern District of Oklahoma certified five questions of Oklahoma Law under the Revised Uniform Certification of Questions of Law Act, 20 O.S. 2001 §§1601-1611 in an attempt to seek clarification of our holding in Saint v. Data Exchange Inc., 2006 OK 59, 145 P.3d 1037. We consolidated and reformulated the questions into two:

1) Does Saint v. Data Exchange, Inc., 2006 OK 59, 145 P.3d 1037 overrule List v. Anchor Paint Mfg. Co., 1996 OK 1, 910 P.2d 1011, and if so, does Saint apply retroactively?

2) Does Saint v. Data Exchange, Inc., 2006 OK 59, 145 P.3d 1037 allow a plaintiff who alleges a violation of the Federal Age Discrimination in Employment Act, 29 U.S. §§621-634, to also pursue a state law claim for wrongful discharge in violation of public policy only if the federal remedy and/or state remedy under the Oklahoma Anti-Discrimination Act, 25 O.S. 2001 §§1101-1901,[1] are proven to be inadequate?

---

[1] The Oklahoma Anti-Discrimination Act, 25 O.S. 2001 §1101 provides:

A. The general purposes of this act are to provide for execution within the state of the policies embodied in the federal Civil Rights Act of 1964, the federal Age Discrimination in Employment Act of 1967, and Section 504 of the federal Rehabilitation Act of 1973 to make uniform the law of those states which enact this act, and to provide rights and remedies substantially equivalent to those granted under the federal Fair Housing Law.

B. This act shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved.

Section 1901 provides:

A. If a charge for discrimination in employment on the basis of handicap is filed under the provisions of Sections 1101 [through 1801 of Title 25 of the Oklahoma Statutes and is not resolved to the satisfaction of the charging party within one hundred eighty (180) days from the filing of such charge, the charging party may

## QUESTIONS ANSWERED.

Saint v. Data Exchange, Inc., 2006 OK 59, 145 P.3d 1037 implicitly overrules List v. Anchor Paint Mfg. Co., 1996 OK 1, 910 P.2d 1011, and it should be applied retroactively to cases which were in the litigation pipeline when Saint was decided.

Pursuant to Saint v. Data Exchange, Inc., 2006 OK 59, 145 P.3d 1037, a plaintiff may pursue a state law claim for wrongful discharge in violation of public policy when the available remedies to the same class of employment discrimination victims are not commensurate; however, double recovery is not permitted.

Mark Hammons,
Jim T. Priest
Oklahoma City, Oklahoma,

J. Vince Hightower,
Broken Arrow, Oklahoma                                    For Plaintiffs.

---

commence an action for redress against any person who is alleged to have discriminated against the charging party and against any person named as respondent in the charge, such action to be commenced in the district court of this state for the county in which the unlawful employment practice is alleged to have been committed.

B. Either party in any such action shall be entitled to a jury trial of any facts in dispute in the action.

C. If it is determined in such action that the defendant or defendants in such action have discriminated against the charging party on the basis of handicap as charged in the petition, the aggrieved party shall be entitled to nominal or actual damages. Actual damages shall include, but are not limited to, reinstatement or hiring, with or without back pay, or any other legal or equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two (2) years prior to the filing of the charge with the Oklahoma Human Rights Commission. Interim earnings or amounts earnable with reasonable diligence by the person discriminated against shall operate to reduce the back pay otherwise allowable. No order of the court shall require the hiring or reinstatement or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused employment or advancement or was suspended or discharged for legitimate reasons other than diserimination on account of handicap.

D. In any action or proceeding under this section the court shall allow a prevailing party a reasonable attorneys fee.

E. No action shall be maintainable in district court as herein provided more than two (2) years after a timely filing of a charge with the Oklahoma Human Rights Commission.

Kristen L. Brightmire,
William S. Leach.
Michael F. Smith,
Tulsa, Oklahoma                                          For Defendants.

## KAUGER, J.:

¶1 The United States District Court for the Eastern District of Oklahoma

certified five questions of Oklahoma Law under the Revised Uniform Certification

of Questions of Law Act, 20 O.S. 2001 §§1601-1611,[2] seeking clarification of our

holding in Saint v. Data Exchange Inc., 2006 OK 59, 145 P.3d 1037. We

consolidated and reformulated[3] them into the two aforementioned questions.

¶2 The record discloses very little factual information about this cause. It

[2]Title 20 O.S. 2001 §1602 provides:

Power to Answer. The Supreme Court and the Court of Criminal Appeals may answer a question of law
certified to it by a court of the United States, or by an appellate court of another state, or of a federally
recognized Indian tribal government, or of Canada, a Canadian province or territory, Mexico, or a Mexican
state, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no
controlling decision of the Supreme Court or Court of Criminal Appeals, constitutional provision, or statute of
this state.

[3]Title 20 O.S. 2001 §1602.1 provides:

Power to Reformulate Question. The Supreme Court of this state may reformulate a question of law certified to
it.

The original questions certified were as follows:

1. Should the decision of the Oklahoma Supreme Court in Saint v. Data Exchange, Inc., 2006 OK 59, 910 P.2d
1011 be applied retroactively?

2. Did the Supreme Court in Saint overrule List v. Anchor Paint Mfg. Co., 1996 OK 1, 910 P.2d 1011?

3. Did the Oklahoma Supreme Court hold in Saint that the federal Age Discrimination in Employment Act, 29
U.S. C. §621 et seq. is not an adequate remedy for age discrimination?

4. Did the Oklahoma Supreme Court in Saint limit its holding to the adequacy of the state remedy for age
discrimination under the Oklahoma Anti-Discrimination Act, 25 O.S. 2001 §1101et seq. and §1901?

5. Did the Oklahoma Supreme Court in Saint hold that a plaintiff alleging violations of the federal Age
Discrimination in Employment Act, 29 U.S.C. §621 et seq. may also pursue and recover under a state law claim
of wrongful discharge in violation of public policy based upon alleged age discrimination in the same action?

4

appears that the plaintiffs, Kruchowski, Adams, Cooper, Fennell, Gebert, Griffin Harris, Hendersot, Kelley, Lewis, Little, Privette, Risenhoover, Rogers, Slagaugh, and White (collectively Kruchowski plaintiffs) and the plaintiff Larry Thompson (Thompson) were all former employees of The Weyerhaeuser Company (the Company). The Kruchowski plaintiffs were terminated pursuant to a series of reductions in force which took place in 2002. Thompson was terminated from employment in 2003.

¶3 On November 24, 2003, the Kruchowski plaintiffs filed a complaint in the United States District Court for the Eastern District of Oklahoma alleging that their terminations were the result of age discrimination, contrary to the Federal Age Discrimination and Employment Act, 29 U.S. §§621-634 (ADEA).[4] On December 16, 2005, Thompson filed a similar complaint.

¶4 On July 11, 2006, we decided Saint v. Data Exchange, Inc., 2006 OK 59, 145 P.3d 1037. On August 24, 2006, the Kruchowski and Thompson cases were consolidated. Four days later, the plaintiffs, relying on Saint, amended their complaints to include allegations that their discharges were also in violation of state law tort for wrongful discharge in violation of Oklahoma public policy. On July 20, 2007, the United States District Court for the Eastern District of Oklahoma filed an

---

[4]The Age Discrimination in Employment Act of 1967, as amended appears in 29 U.S.C. §§621-634, and it prohibits employment discrimination based on age.

order certifying questions of law to this Court.

**I.**

**¶5 Saint v. Data Exchange, Inc., 2006 OK 59, 145 P.3d 1037 IMPLICITLY OVERRULED List v. Anchor Paint Mfg. Co., 1996 OK 1, 910 P.2d 1011, AND IT SHOULD BE APPLIED RETROACTIVELY.**

¶6 The Kruchowski plaintiffs argue that Saint clearly abrogated List's holding because List did not address what remedies were required by the Okla. Const. art. 5, §46.[5] The Company contends that Saint was nothing more than a reiteration of this Court's prior limited holdings in cases such as Tate v. Browning-Ferris, Inc., 1992 OK 72, 833 P.2d 1218 and Collier v. Insignia Financial Group, 1999 OK 49, 981 P.2d 321. According to the parties, courts are not clear as to whether Saint impacted List's holding.[6] Because uncertainty apparently still remains about the nature of the Burk tort, to answer today's certified question we must revisit List, its predecessors, and its progeny.

**a. List v. Anchor Paint Mfg. Co., 1996 OK 1, 910 P.2d 1011, its predecessors and its progeny.**

---

[5]The Okla. Const. art. 5, §46 provides in pertinent part:

. . .The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: . . .
Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, . . .

[6]For example, in Enderwood v. Sinelair Broadcast Group, Inc., 233 Fed. Appx. 793, 797, 2007 WL 1180426 (10th Cir. 2007), an unpublished age discrimination case, the court describes List as having been abrogated by Saint. In Harman v. State of Oklahoma ex rel. Northern Oklahoma Board of Regents, 2007 WL 1674205 (W.D. Okla. 2007), an order refers to Saint as recognizing Oklahoma's public policy of prohibiting age discrimination, but the court ignored List.

6

¶7 In 1996, the Court decided List v. Anchor Paint Mfg. Co., 1996 OK 1, 910 P.2d 1011, a case which tested the possible expansion of the tort-based exception to Oklahoma's employment-at-will doctrine recognized and adopted in Burk v. K-Mart Corp, 1989 OK 22, ¶17, 770 P.2d 24. Burk involved a federal certified question concerning an alleged "implied obligation of good faith and fair dealing" in reference to termination of any employment-at-will contract. The Burk employee sued her employer in contract and in tort, alleging that she was prevented from performing her job duties and was, consequently, constructively discharged. She further asserted that her employer's agent told her he would not recommend her for a promotion because of her sex.

¶8 Although the Court rejected the implication of a duty of good faith and fair dealing in every employment-at-will contract, Burk was the landmark case wherein the Court adopted a public policy exception to the at-will termination rule in a narrow class of cases in which the discharge of an employee is contrary to the clear mandate of public policy as articulated by constitutional, statutory, or decisional law. We recognized, for the first time, that the action was a tort. We also noted that because the term "public policy" was vague, the exception had to be tightly circumscribed.

¶9 Three years after Burk, we promulgated Tate v. Browning Ferris, Inc, 1992

7

OK 72, 833 P.2d 1218. <u>Tate</u> involved the question of whether a <u>Burk</u> tort could be asserted for racial discrimination, to which we answered — yes. In discussing the remedies available for such a claim, the Court determined that the remedies provided by the Oklahoma Discrimination Act, 25 O.S. 1991 §1101-1901, for racial discrimination were not exclusive because the Act provided more available remedies for those who alleged discrimination on the basis of handicap than those who alleged racial discrimination. The court noted in ¶18 that:

> The Act here in contest does not provide a private right of action to a person aggrieved by racially discriminatory practices if the Commission does not resolve the claim to his satisfaction. In contrast, it does afford a private right of action for discrimination based on handicap. Were we today to construe the statute as having established the sole remedy for racially discriminatory practices, we would create a dichotomous division of discrimination remedies contrary to Art. 5 § 46 of the Oklahoma Constitution. There would be a more generous remedy for victims of handicap discrimination than for those who suffered from racial discrimination. For remedial purpose, discrimination victims comprise a single class. Our Constitution absolutely interdicts the passage of special law that would sanction disparate remedies for those who complain of employment discrimination. (Citations omitted.)

¶10 Accordingly, we held that "the employee who brings a common-law tort action for damages occasioned by either a racially motivated discharge or by one in retaliation for bringing a racial discrimination complaint states a state-law claim for tortious employment termination under *Burk*."[7] However, we left the matter for the

---

[7]<u>Tate</u> v. <u>Browning Ferris</u>, <u>Inc</u>, 1992 OK 72, ¶19, 833 P.2d 1218

trial court to preclude plaintiff's double recovery for cumulative theories of recovery.

¶11 After Tate, we decided List v. Anchor Paint Mfg. Co., 1996 OK 1, 910 P.2d 1011,[8] which involved the question of whether the Burk tort would be extended to violations of public policy predicated on constructive discharge. The List plaintiff alleged that he was demoted based on his age and that it was a deliberate attempt to make his working conditions so intolerable that he would voluntarily resign. List's claim was predicated solely upon his status — his age. Diverging from the language we used in Tate in which we recognized that victims of discrimination form but one class and are constitutionally required to be treated the same, the Court instead focused on the remedies that would be available to List

---

[8]After Burk, we decided in McGehee v. Floraflax, International, Inc., 1989 OK 102, ¶14, 776 P.2d 852, that Burk applied retroactively. Shortly thereafter, in Todd v. Frank's Tong Service, Inc, 1989 OK 121, ¶12, 784 P.2d 47, the Court held that to allow employers to dismiss employees who refuse to drive vehicles not conforming to statutory mandates of safety and equipment and operation would contravene public policy. In Vannerson v. Board of Regents of University of Oklahoma,, 1989 OK 125, ¶12, 784 P.2d 1053, we remanded a cause for re-trial where an alleged violation of public policy as a basis of discharge was submitted to the jury with another alleged violation of public policy for which there was no evidentiary support. Three years later in Smith v. Farmers Co-op. Ass'n of Butler, 1992 OK 11, ¶12, 825 P.2d 1323, the Court noted that the public policy exception to the employee-at-will doctrine applied when an employee is fired in retaliation for acting consistent with 11 O.S. 1991 §43-101. In 1994, we decided Groce v. Foster, 1994 OK 88, ¶19, 880 P.2d 902, in which we held that under the limited public policy exception, an employee could assert a Burk tort against a former employer when the employee was fired for not dismissing his common law negligence action against a third party who was a customer of the employer. *But see*, Shero v. Grand Savings Bank, 2007 OK 24, ¶13, 161 P.3d 298, which reached the opposite conclusion. In 1994, we also decided Gilmore v. Enogex, Inc., 1994 OK 76, ¶21, 878 P.2d 360, a case involving an employee who was discharged for refusing to submit to a random drug test. We determined that there was no clear mandate present either in the United States or Oklahoma Constitution, state statutes or regulations, or in the common law which would characterize the discharge as a breach of public policy. The next year we decided Brown v. Ford, 1995 OK 101, ¶10, 905 P.2d 223, a case involving an employee who sued an employer for sexual harassment, wrongful termination, and sexual battery. Because Oklahoma's common law afforded Brown an ample remedy by an action for assault and battery, it was unnecessary to decide whether a Burk claim would lie. The same year in Atkinson v. Halliburton, Co, 1995 OK 104, ¶27, 905 P.2d 772, we held that a plaintiff must first comply with the statutory procedures as a prerequisite to filing a tort claim alleging discharge from employment due to handicap discrimination.

9

and whether they were "adequate." Absent from the opinion was any discussion of art. 5, §46 of the Oklahoma Constitution.[9]

¶12 Ultimately, the Court determined that it need not extend the Burk exception to the at-will termination rule to age discrimination claims because the plaintiff had "adequate" statutory remedies for age discrimination. Rather than defining "adequate," the Court postulated that because the plaintiff's rights were protected by the Federal Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621-634, he had more comprehensive remedies than the Tate plaintiff did under the Federal Civil Rights Act of 1964, 28 U.S.C. §1447.

¶13 Consequently, in List, we implicitly equated the fact that the plaintiff had more remedies available to him than the Tate plaintiff with term "adequate" remedies. The Court also noted that "[m]ost courts have refused to allow common law retaliatory discharge actions based on age or illness, saying that only a discharge arising from the employee's acts, rather than his status, will support a common law retaliatory discharge action."[10] Examples of such conduct, rather than status were: employees being fired for reporting unlawful or unsafe activities to the authorities; refusing sexual advancement of supervisors; refusing to perform unsafe

---

[9]The Okla. Const. art. 5, §46, see note 5, supra.

[10]List v. Anchor Paint Mfg. Co., 1996 OK 1, ¶16, 910 P.2d 1011

10

work activities; and filing workers' compensation claims.

¶14 The next year, the Court decided Marshall v. OK Rental & Leasing, Inc, 1997 OK 34, 939 P.2d 1116.[11] In Marshall, the employee sued a former employer alleging intentional infliction of emotional distress and constructive discharge due to sexual harassment by a co-worker. The Court again declined to extend the Burk exception to a claim of constructive discharge based on sexual harassment. Relying on List, supra, the Court again decided that a Burk tort could not lie because the action was based upon the plaintiff's status rather than her conduct.

¶15 Again, looking to the "adequacy" of the remedies available to the plaintiff, Marshall determined that because the remedies provided by Federal law in Title VII[12] and Oklahoma's anti-discrimination statutes[13] provided "adequate" remedies, there was no reason to extend the Burk tort exception to Marshall's claim.

¶16 Two years after Marshall, we once again addressed the issue of whether a plaintiff alleging sexual harassment in the workplace could state a Burk tort claim in Collier v. Insignia Financial Group, 1999 OK 49, 981 P.2d 321. This time, the

---

[11]In Griffin v. Mullinix, 1997 OK 120, ¶2, 947 P.2d 177, the Court held that the State of Oklahoma had not articulated a clear mandate of public policy which conferred a private right of action upon which to base a tort for wrongful termination of employment alleging retaliation for protesting or attempting to alter working conditions that the plaintiff believed to be unsafe. In Wheless v. Willard Grain & Feed, Inc., 1998 OK 84, ¶7, 964 P.2d 204, we held that an employee would not maintain an action for wrongful termination in violation of public policy if he was a party to falsifying environmental regulatory reports required by state statute.

[12]Title VII if the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*.

[13]The Oklahoma Anti-Discrimination Act, 25 O.S. 1991 §1101 see note 1, supra.

11

victim alleged that *quid pro quo*[14] sexual harassment by a supervisor led to her constructive discharge. She, like the plaintiff in Marshall, sued under Title VII and Oklahoma's anti-discrimination statutes.

¶17 The Court set forth the requisites for asserting a retaliatory constructive discharge claim and noted that the Burk tort was available to redress employer violations of any state-declared public policy for which there was no civil remedy. We said that if the Oklahoma Anti-Discrimination Act[15] provided an adequate remedy for the offending sexual harassment, there can be no Burk tort. The Court then recognized that the Oklahoma Act gave discharged victims of handicap discrimination a private cause of action against the offending employer, but it provided only an administrative remedy for victims of *quid pro quo* sexual harassment.

¶18 Finally, the Court determined that if we were to hold that the Oklahoma Act provided the exclusive remedy, in effect, we would be sanctioning unequal remedies for members of the same class in violation of the Oklahoma Constitution. Accordingly, we held that a common law Burk tort was an available remedy for the

---

[14]In Collier v. Insignia Financial Group, 1999 OK 49, ¶11, 91 P.2d 321, we declared the so called *quid pro quo* conduct [conditioning employment upon the grant of a sexual favors requested of an employee by an employer] the oldest and crudest form of employment-connected harm to economically dependent and disadvantaged victims which lies clearly within the core concept of the state law's prohibition against gender-based, on-the-job discrimination.

[15]Id.

12

plaintiff. Absent from the discussion in Collier was an analysis of the remedies available to the plaintiff under Federal law and their alleged "adequacy."

¶19 However, the "adequacy" of a federal remedy was tested in Clinton v. State of Oklahoma *ex rel.* Logan County Election Board, 2001 OK 52, 29 P.3d 543,[16] the final case leading to Saint. Clinton involved an employee who alleged she was discharged because she was pregnant. The Court held that because the employee had an "adequate" federal statutory remedy for wrongful discharge, she could not also assert a Burk tort. We did not discuss the "adequacy" of the federal remedy, instead, we noted that:

> When a statutory remedy adequately accomplishes the goal of protecting Oklahoma public policy, a common law remedy is not needed. While a federal statute cannot by itself serve as a statement of Oklahoma policy, a federal statutory remedy may be as effective as an Oklahoma statutory remedy in dissuading employers from discharging employees for reasons that violate Oklahoma public policy. Accordingly, we hold the existence of a federal statutory remedy that is sufficient to protect Oklahoma public policy precludes the creation of an independent common law claim based on a public policy exception to the employment-at-will doctrine.

¶20 The Court also clarified the parameters of the Burk tort remedy:

---

[16] In Barker v. State Ins. Fund, 2001 OK 94, ¶16, 40 P.3d 463, employees who alleged wrongful discharge in retaliation for whistle-blowing in violation of public policy failed to prove any established or well-defined public policy that was violated. In Silver v. CPC-Sherwood Manor, Inc, 2004 OK 1, ¶7, 84 P.3d 728, we held that state statutes regarding the holding, preparing, or delivery of food provided sufficient public policy goals to sustain a Burk tort. In McCrady v. Oklahoma Department of Public Safety, 2005 OK 67, ¶13, 122 P.3d 473, we held that the Burk tort would not apply to a classified state employee because the employee was not an "employee-at-will" and thus not within the persons entitled to assert such a claim.

13

1) the plaintiff must identify an Oklahoma public policy goal that is clear and compelling and is articulated in existing Oklahoma constitutional, statutory or jurisprudential law; 2) the existence of a federal statutory remedy or state statutory remedy which is sufficient to protect the identified Oklahoma public policy goal precludes a Burk tort; 3) the plaintiff must establish he or she is an at-will employee and the reason for discharge violates the identified Oklahoma public policy goal; and 4) a discharge for purposes of the Burk tort may be either actual or constructive.

¶21 Finally, in Saint v. Data Exchange, Inc., 2006 OK 59, 145 P.3d 1037,[17]

the Court again addressed whether a Burk tort remedy was available to an age-discrimination plaintiff. The Saint plaintiff brought an age discrimination suit in Federal Court, asserting claims under the federal age discrimination statute[18] and Oklahoma's public policy against age discrimination as embodied by the Oklahoma Anti-Ddiscrimination Act, 25 O.S. 2001 §§1101-1901. The plaintiff's argument was that the Oklahoma Anti-Discrimination Act created a unified class of persons who are the victims of handicap, race, gender, or age discrimination, therefore, equal remedies are required for all those persons under art. 5, §46 of the Oklahoma Constitution.[19]

¶22 The federal court in Saint certified the following question:

---

[17]In Shero v. Grand Savings Bank, see note 7, supra, we held that an employer who terminated an employee for refusing to dismiss his claims against a third party client of the employer pursuant to the Open Records Act did not violate any public policy which would support a Burk tort claim.

[18]Title 29 U.S.C. §§621 *et seq*.

[19]The Okla. Const. art. 5, §46, see note 5, supra.

14

Is there either an implied statutory remedy or a common-law *Burk* tort remedy for state age discrimination claims arising under the operation of the Oklahoma Constitution, art. 5, §46 and the provisions of the Oklahoma Anti-Discrimination Act, 25 O.S. §§1101, et seq. and §1901?

We noted the prior holdings which had expanded the common-law Burk tort remedy

to the areas of race and sexual harassment. We recognized that:

1) refusal of such remedies would create a dichotomous division of members of the same class, which would offend the §46 mandated norms of uniformity, symmetry and evenhanded treatment;[20] 2) age-discrimination victims are part of the employment discrimination class, and as such must be afforded the same rights as the other members of the class; and 3) there is a Burk tort remedy for those who allege age employment age discrimination.[21]

¶23 Although Saint also involved age discrimination, it did not address List at

all. Saint was decided under a constitutional question, whereas List was not.

Nevertheless, the holding in Saint is clearly contrary to List's holding and as such,

List was implicitly overruled. Today, we expressly overrule List and reaffirm that

age discrimination victims are part of the employment discrimination class to which

Burk applies.

¶24 After Saint,[22] we again addressed the elements of a Burk tort in Vasek v.

---

[20]Saint v. Data Exchange, Inc., 2006 OK 59, ¶3, 145 P.3d 1037.

[21]Saint v. Data Exchange, Inc., see note 18, supra at ¶6.

[22]Also after Saint, in Darrow v. Integris Health, Inc, 2008 OK 1, ¶¶12-13, 176 P.3d 1204, we held that a federal statute standing alone does not articulate Oklahoma's public policy. Only a specific Oklahoma court decision, state legislative or constitutional provision, or a provision in the federal Constitution that prescribes a norm of conduct for the state can serve as a source of Oklahoma's public policy.

15

Board of County Commissioners, 2008 OK 35, ¶¶27-28, 186 P.3d 928. It involved a plaintiff who alleged wrongful termination for making a complaint to the Department of Labor (DOL) concerning mold at the courthouse. The plaintiff's action was not based on discrimination such as those addressed in Saint (handicap, race, sex and age), rather it was based on the fact that she alleged she was fired for reporting her employer's violation of the law. We reiterated the elements of a Burk tort in such circumstances, stating:

The elements of a claim for wrongful discharge of an at-will employee articulated in Burk and its progeny can be summarized. A viable Burk claim must allege (1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal.

¶25 In Vasek, we equated "adequacy" of remedies with "sufficiency," in other words: Were the remedies available to the plaintiff sufficient to protect Oklahoma's public policy goals? Our decision today does not disturb Vasek or cases in which a plaintiff's conduct is alleged to have triggered a discharge or constructive discharge in violation of Oklahoma public policy. However, to the extent that the rationale of Marshall v. OK Rental & Leasing, Inc, 1997 OK 34, 939 P.2d 1116 and Clinton v. State of Oklahoma ex rel. Logan County Election Board,

16

2001 OK 52, 29 P.3d 543, conflicts with our decision in Saint and our decision today, they are expressly overruled.

## b. Retroactivity

¶26 The Saint Court did not address whether the opinion should be applied retroactively. This Court is neither prohibited from giving, nor compelled to give, judicial decisions retrospective operation.[23] Judicial policy determines whether, and to what extent, a new rule will operate retroactively.[24] We may give prospective operation to our announcements when necessary to avoid disruption and to allow a period for adjustment.[25] In making such a determination, we must consider: 1) the purpose of the new rule; 2) the extent of reliance on old doctrines; and 3) the burden likely to be imposed on administering the legal process due to additional litigation or curative actions.[26]

¶27 In McGehee v. Florafax International, Inc., 1989 OK 102, 776 P.2d 852,

---

[23]Resolution Trust Corp. v. Grant, 1995 OK 68, ¶22, 901 P.2d 807; Great Northern Ry. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364-65, 52 S.Ct. 145, 77 L.Ed. 360 (1932). Neither the United States Constitution nor the Constitution of the State of Oklahoma delineate the effective date of judicial opinions.

[24]Harry R. Carlile Trust v. Cotton Petroleum, 1989 OK 16, ¶16, 732 P.2d 438, cert. denied 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 and 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 764 (1986).

[25]Able Auto Cash Express, Inc. v. State ex rel. Oklahoma Dept. of Consumer Credit, 2003 OK 89, ¶20, fn. 27, 78 P.3d 1231; Cambell v. White, 1993 OK 89, ¶18, 856 P.2d 255. In Great Northern Railway v. Sunburst Oil & Refining Co., see note 20, supra, a noncriminal case involving no question of constitutional law, the Court developed the Sunburst Doctrine, holding that a state may choose for itself between the principle of relation back and forward operation of its precedents. Globe Life and Acc. Inc. Co. v. Oklahoma Tax Com'n, 1996 OK 39, ¶20, fn. 41, 913 P.2d 1322.

[26]Resolution Trust Corp. v. Grant, see note 22, supra; Short v. Kiamichi Area Vo-Tech School, 1988 OK 89, ¶19, 761 P.2d 472, cert. denied 489 U.S. 1066, 109 S.Ct. 1341, 103 L.Ed.2d 811 (1988); Henry R. Carlile Trust v. Cotton Petroleum Corp, see note 21 supra; Thompson v. Presbyterian Hosp., Inc., 1982 OK 87, ¶33, 652 P.2d 260.

17

we discussed these factors when we held that Burk would be applied retroactively.

McGehee involved an employee who alleged he was fired for refusing to commit

perjury. In discussing whether to apply Burk retroactively the Court noted at ¶¶11-

13 that:

 The public policy exception to the employment-at-will rule seeks to maintain
a proper balance "among the employer's interest in operating a business
efficiently and profitably, the employee's interest in earning a livelihood, and
society's interest in seeing its public policies carried out." . . . Retroactive
application of Burk will only further the operation of the limited public policy
exception to employment-at-will doctrine by advancing well-established
public policies. Liability is imposed on an employer only when "an employee
is discharged for refusing to act in violation of an established and
well-defined public policy or for performing an act consistent with a clear and
compelling public policy.". . .

Unfairness and undue hardship would be imposed upon discharged
employees by a merely prospective application of the Burk decision.
Appellant would be deprived of an actionable tort claim for his employer's
alleged violation of a clear expression of public policy found in the perjury
statute. . . . In contrast, no inequity will result from the retroactive application
of Burk. Employers accused of violating clear expressions of public policy
cannot be said to have justifiably relied on the employment-at-will doctrine.

. . . Nor will appellees in this action be substantially harmed by being forced,
at a new trial, to present evidence that appellant's discharge was motivated by
poor employee performance rather than his refusal to sign false small claims
affidavits. Appellees' claim of "good-faith reliance" on the
employment-at-will doctrine cannot justify its alleged tortious firing for an
employee's refusal to commit a crime. No "manifest injustice" will result from
requiring appellees to defend against appellant's claim. (Citations omitted.)

¶28 While the same rationale we applied in making the Burk tort retroactive

18

in <u>McGehee</u> could apply to <u>Saint</u>, <u>McGehee</u> was decided only six months after

<u>Burk</u>, not ten years later. Consequently, based on consideration of the factors

enumerated in <u>McGehee</u> and based on consideration that <u>Saint</u> was decided ten

years after <u>List</u>, rather than six months, we hold that the <u>Saint</u> decision will be given

retroactive application to all matters which were in the litigation pipeline, state and

federal, when <u>Saint</u> was decided, but not to any claims which arose *before* <u>Saint</u> and

which were not pending when <u>Saint</u> was decided.

## II.
## ¶29 PURSUANT TO <u>Saint</u> v. <u>Data</u> <u>Exchange</u>, <u>Inc.</u>, 2006 OK 59, 145 P.3d 1037 AVAILABLE REMEDIES MUST BE COMMENSURATE WITH THE SAME CLASS OF EMPLOYMENT DISCRIMINATION VICTIMS.

¶30 The plaintiff in <u>Saint</u> v. <u>Data</u> <u>Exchange</u>, <u>Inc.</u>, 2006 OK 59, 145 P.3d

1037, argued that she was entitled to assert a state law <u>Burk</u> tort claim for wrongful

discharge in violation of public policy because available remedies sought pursuant

to the Federal Age Discrimination in Employment Act, 29 U.S. §§621-694, and/or

state remedies under the Oklahoma Anti-Discrimination Act, 25 O.S. 2001 §§1101-

1901, were inadequate. However, rather than discuss the *adequacy* of the remedies,

we spoke in terms of disparate remedies and determined that, as required by the

Constitution, the *same* remedies must be made available for everyone within the

class of employment discrimination — handicap, race, sex and age.

19

¶31 Accordingly, pursuant to <u>Saint</u> v. <u>Data Exchange, Inc.</u>, 2006 OK 59, 145 P.3d 1037, and in order to provide clarity to the bench and bar, we hold that a plaintiff may pursue a state law claim for wrongful discharge in violation of public policy when the available remedies to the same class of employment discrimination victims are not uniform and evenhanded – regardless of whether the remedies originate under Federal or State law. It is only when the available remedy to the victim is not commensurate with that which is provided for like or similar discrimination to vindicate an on-the-job tort that we will craft an appropriate common law remedy.

¶31 The <u>Burk</u> claim's actionable character is anchored in the employer's discharge in breach of Oklahoma's public policy. In order to assert such a claim, the plaintiff must show that a breach of Oklahoma's public policy occurred for which there is no statutorily-crafted remedy or the available statutory remedy is not commensurate with that provided for similar work-related discrimination.[27]

¶32 Although we did not expressly say so in <u>Saint</u>, it goes without saying that this does not mean that the plaintiff is entitled to double recovery for cumulative theories of liability. In <u>Tate</u> v. <u>Browning-Ferris, Inc.</u>, 1992 OK 72, ¶19, 833 P.2d

---

[27]After <u>Saint</u>, in <u>Vasek</u> v. <u>Board of County Commissioners</u>, 2008 OK 35, ¶¶27-28, 186 P.3d 928, we noted that the question was whether "a statutory remedy exists that is sufficient to protect the Oklahoma public policy goal" and that, in <u>Vasek</u>, there was no such statutory remedy sufficient to protect the Oklahoma public policy goal.

20

1218, we stated that Oklahoma law allows only one recovery to make a plaintiff whole.[28] Consequently, the federal court has to hold the plaintiff's cumulative theories of recovery to one complete recovery.

## CONCLUSION

¶33 In List v. Anchor Paint Mfg. Co. 1996 OK 1, 910 P.2d 1011, the Court declined to extend the Burk tort remedy to a claim involving allegations of constructive discharge based on age discrimination because the plaintiff had "adequate" statutory remedies for age discrimination such as the Federal Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621-634. Subsequently, the Court recognized in Clinton v. State of Oklahoma *ex rel*. Logan County Election Board, 2001 OK 52, 29 P.3d 543, that the Burk tort remedy applied to both actual and constructive discharges. Finally, in Saint v. Data Exchange, Inc., 2006 OK 59, 145 P.3d 1037, the Burk public policy exception was applied to a victim of alleged age discrimination because a refusal to do so would create a dichotomous division of members of the same class, which would offend the Oklahoma Constitution, art. 5, §46[29] mandated norms of uniformity, symmetry and evenhanded treatment.

¶34 Our earlier holding that age-discrimination victims are part of the

---

[28]*See also*, J.C. Houck v. Hold Oil Corp., 1993 OK 166, ¶32, 867 P.2d 451; Cotner v. Lon Jacobs Grocery Co., 1921 OK 377, ¶32, 202 P. 997.

[29]The Okla. Const., art. 5, §46, see note 5, supra.

21

employment discrimination class, and as such must be afforded the same rights as the other members of the class, implicitly overruled List. Today, we expressly overrule List v. Anchor Paint Mfg. Co, 1996 OK 1, 910 P.2d 1011, and hold that there is a Burk tort remedy for those who allege employment age discrimination. To the extent that the rationale of Marshall v. OK Rental & Leasing, Inc, 1997 OK 34, 939 P.2d 1116 and Clinton v. State of Oklahoma ex rel. Logan County Election Board, 2001 OK 52, 29 P.3d 543, conflicts with our decision in Saint and our decision today, they too are expressly overruled. When Saint was decided, retroactivity was not an issue. However, for the same reasons expressed in McGehee v. Florafax International, Inc., 1989 OK 102, 776 P.2d 852, and because Saint was decided ten years after List, we apply Saint retroactively and apply Saint to Burk tort claims to only those cases which were in the litigation pipeline when Saint was decided.

¶35 Pursuant to Saint v. Data Exchange, Inc., 2006 OK 59, 145 P.3d 1037, a plaintiff may pursue a state law claim for wrongful discharge in violation of public policy when the available remedies to the same class of employment discrimination victims are not uniform and evenhanded – regardless of whether the remedies originate under Federal statutes or state law. However, it is only when the available remedy to the victim is not commensurate with that which is provided for similar

22

harms to vindicate an employment discrimination on-the-job tort that the Burk
common law remedy is available.

¶36 Nevertheless, the Burk claim's actionable character is anchored solely in
the employer's discharge in breach of Oklahoma's public policy.  In order to assert
such a claim, the plaintiff must make a showing that a breach of Oklahoma's public
policy occurred for which (a) there is no available statutory-crafted remedy or (b)
the available statutory remedy is not commensurate with that which is provided for
similar work-related discrimination.

## QUESTION ANSWERED.

WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER,
TAYLOR, COLBERT, REIF, JJ., concur.

WATT, J., concurs in part and dissents in part.

TED KRUCHOWSKI, GERALD ADAMS,
WILLIAM COOPER, TONY FENNELL,
ALAN GEBERT, HAROLD GRIFFIN,
STAN HARRIS, FORD HENDERSHOT,
ED RISENHOOVER, SUSAN ROGERS,
LINDA SLABAUGH and JOEL WHITE,

    Plaintiffs,

v.

THE WEYERHAEUSER COMPANY,

    Defendant.

and

LARRY THOMPSON,

    Plaintiff,

v.

THE WEYERHAEUSER COMPANY,

    Defendant.

**FILED**
SUPREME COURT
STATE OF OKLAHOMA

DFC i 6 2008

MICHAEL S. RICHIE
CLERK

No. 104,872

FOR OFFICIAL
PUBLICATION

**WATT, J. concurring in part and dissenting in part:**

¶1 I concur in today's opinion to the extent that: 1) it relies on this Court's pronouncement in <u>Saint</u> v. <u>Data Exchange, Inc.</u>, 2006 OK 59, ¶6, 145 P.3d 1037 determining that the **Okla. Const. art. 5, §46**[1] gives to an age-discrimination plaintiff a cause of action comparable to the statutory handicap-discrimination remedy;[2] and 2) limits retroactivity of the <u>Saint</u> opinion. I dissent to the extent

---

[1] The Okla. Const. art. 5, §46 providing in pertinent part:

"... The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

... Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals ..."

[2] The Oklahoma Anti-Discrimination Act, 25 O.S. 2001 §1101, *et seq.*

that the majority holds that <u>Saint</u> overrules <u>List</u> v. <u>Anchor</u> <u>Paint</u> <u>Mfg.</u> <u>Co.</u>, 1996

OK 1, 910 P.2d 1011, **in which the majority recognizes no constitutional**

**challenge was presented**[3] along with <u>Marshall</u> v. <u>OK</u> <u>Rental</u> <u>&</u> <u>Leasing, Inc.</u>,

1997 OK 34, 939 P.2d 1116, which, similar to <u>List</u>, contained no constitutional

attack.

### ¶2 IT IS UNNECESSARY TO OVERRULE <u>LIST</u> v. <u>ANCHOR</u> <u>PAINT</u> <u>MFG.</u> OR <u>MARSHALL</u> v. <u>OK</u> <u>RENTAL</u> <u>&</u> <u>LEASING, INC.</u>, CASES IN WHICH THE COURT WAS NOT CALLED UPON TO ADDRESS THE CONSTITUTIONAL CHALLENGE LEVIED IN <u>SAINT</u> v. <u>DATA</u> <u>EXCHANGE, INC.</u>

¶3 In <u>List</u>, we were asked to extend the common law <u>Burk</u> tort to a situation

where the employee alleged a constructive discharge claim based on age

discrimination. The allegations in support of the age discrimination claim are

found in footnote number 1 of the <u>List</u> opinion providing in pertinent part:

> ". . . (10) C.R. List claims, and the Defendants deny, that the decision to demote C.R. List to Head of Labeling was based on age and was a deliberate attempt to make his working conditions so intolerable that he would voluntarily resign his employment and that this employment action constitutes a wrongful discharge in violation of the public policy of Oklahoma, as articulated in the Age Discrimination Act of 1967, 29 U.S. C. § 626(b), and Oklahoma's Anti-Discrimination Act, Okla.Stat. tit. 25, § 1302.
>
> (11) L. List also claims wrongful discharge in violation of public policy as articulated by the Age Discrimination in Employment Act of 1967, §623(d), and Oklahoma's Anti-Discrimination Act, Okla.Stat. tit. 25, § 1302. . . ."

**Notably absent from the allegations in <u>List</u> are the constitutional challenges**

**specifically presented to the Court in <u>Saint</u>.** In response to the motion to

dismiss in <u>Saint</u>, the plaintiff asserted "that the Oklahoma Statute creates a unified

class of persons who are the victims of handicap, race, gender or age

discrimination therefore requiring equal remedies for all of those persons under

---

[3]See, ¶23, majority opinion providing in pertinent part:

". . . <u>Saint</u> was decided under a constitutional question whereas <u>List</u> was not. . . ."

2

Art. 5, § 46." [Footnote omitted.]

¶3 Marshall v. OK Rental & Leasing, Inc., 1997 OK 34, 939 P.2d 1116 is similar to List on two fronts. First, like List, no constitutional challenge was presented in support of the sexual harassment claim. Second, also in accord with the reasoning of List, the Court refused to create a Burk public policy exception to the employment-at-will doctrine where the employee's claim was based solely upon her status rather than her conduct and where adequate remedies existed under state and federal discrimination statutes.

¶4 It is interesting to note that the author of the majority opinion dissented in Collier v. Insignia Financial Group, 1999 OK 49, 981 P.2d 321 to what the dissent characterized as a partial overruling of List and Marshall.[4] Collier holds that a victim of *quid pro quo* sexual harassment who has been discharged from employment, either explicitly or constructively, can maintain a public policy tort claim under the Burk exception to the common law's employment-at-will doctrine. Relying on List and Marshall, the dissent asserted that there was no reason to extend the Burk doctrine as the employee had the opportunity to recover money damages under federal law. The writing goes on to assert that such an extension is not required even if the cause is brought in state court as federal claims are enforceable in Oklahoma courts.[5]

---

[4] Collier v. Insignia Financial Group, 1999 OK 49, 981 P.2d 321 [Kauger, J. dissenting] providing in pertinent part at ¶6:

"It was acknowledged in our decisions in List v. Anchor Paint Mfg. Co., 1996 OK 1, ¶12, 910 P.2d 1011 and in Marshall v. OK Rental & Leasing, Inc., 1997 OK 34, ¶23, 939 P.2d 1116 — **overruled in part by the majority opinion.** Refusing to extend the Burk analysis in List, we distinguished Tate and acknowledged that the statutory scheme allowed the employee to pursue a jury trial and to attempt to recover punitive damages for his age discrimination claim. . . ." [Emphasis supplied.]

[5] Collier v. Insignia Financial Group, see note 4, supra providing in pertinent part at ¶8 of the dissenting opinion:

". . . Here, as in List and in Marshall, the employee has the opportunity to recover money damages under federal law. Even if the cause had been brought in state court, the extension of Burk here would be unnecessary. State courts can and do decide questions of federal law. Federal claims analogous to those outlined in state law are enforceable in Oklahoma courts. The remedies afforded under the Federal Act are available in our courts." [Footnotes omitted.]

3

¶5 As late as 2001, the author of the majority opinion reiterated the statements made in the Collier dissent. In a concurring opinion to Clinton v. State *ex rel.* Logan County Election Board, 2001 OK 52, 29 P.3d 543, the authoring Justice wrote the following in ¶1 of the concurring opinion.

> "... The majority recasts the certified question adopting the position expressed in the dissent in Collier v. Insignia Commercial Group, 1999 OK 49, ¶8, 981 P.2d 321. It is unnecessary to extend the teachings of Burk v. K-Mart Corp., 1989 OK 22, 770 P.2d 24 to remedy a state law public policy claim for wrongful discharge if adequate federal statutory remedies are available to the employee for a wrongful discharge. I concur based on the reasoning set forth in my dissent in Collier. ..."

No more reason exists today to overrule List or Marshall, **cases in which no constitutional challenge was presented or considered,** than was present when either the dissent in Collier was written or when the concurring opinion in Clinton was authored.

## CONCLUSION

¶6 No justification exists for today overruling cases decided by this Court in excess of ten years ago in which we were not requested to address a constitutional challenge. Therefore, I concur in today's opinion to the extent that it upholds the constitutional challenge to an age discrimination challenge recognized in Saint v. Data Exchange, Inc., 2006 OK 59, 145 P.3d 1037 and to the limited retroactive application of that opinion. Nevertheless, I dissent to the unnecessary overruling of List v. Anchor Paint Mfg. Co., 1996 OK 1, 910 P.2d 1011 in which no constitutional challenge was presented or considered and to the same treatment of Marshall v. OK Rental & Leasing, Inc., 1997 OK 34, 939 P.2d 1116, which similar to List, contained no constitutional challenge.

4